UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| MARY MILLER,<br><br>    Plaintiff,<br><br>v.<br><br>WHOLESALE AMERICA MORTGAGE, INC, et al.,<br><br>    Defendants. | Case No. 17-cv-05495-LB<br><br>**ORDER SEVERING CLAIMS AGAINST DEFENDANT WHOLESALE AMERICA MORTGAGE, INC. AND GRANTING REMAINING DEFENDANTS' MOTIONS TO DISMISS**<br><br>Re: ECF Nos. 9, 20 |

## INTRODUCTION

This is the second action filed by plaintiff Mary Miller regarding the mortgage on her home (referred to in the complaint as the "Subject Property"). Ms. Miller previously filed an action in 2012 requesting a court order cancelling her mortgage debt and obligations, enjoining foreclosure, and awarding her full title to the Subject Property. Following four years of litigation, Ms. Miller's first action was dismissed in its entirety. Ms. Miller now brings this second action against many of the same defendants (plus several new ones), once again seeking a court order cancelling her mortgage debt and obligations, enjoining foreclosure, and awarding her full title to the Subject Property. The defendants have moved to dismiss on a number of grounds, including the ground that this second action of Ms. Miller is barred by res judicata.[1]

---

[1] Pursuant to Civil Local Rule 7-1(b), the court finds this matter suitable for determination without oral argument and vacates the hearing set for January 11, 2018.

ORDER – No. 17-cv-05495-LB

As discussed below, the undersigned lacks jurisdiction over Ms. Miller's claims against one of the defendants, Wholesale America Mortgage, Inc. ("Wholesale America"), and therefore severs the claims against that defendant. The undersigned retains jurisdiction over the rest of Ms. Miller's claims and dismisses them with prejudice as barred by res judicata.

## STATEMENT

### 1. The Mortgage on the Subject Property

On March 1, 2006, Ms. Miller entered into a mortgage with defendant Wholesale America.[2] Specifically, she executed an adjustable-rate promissory note (the "Note") payable to Wholesale America and secured the Note with a deed of trust (the "Deed of Trust") on the Subject Property.[3] The Deed of Trust identified Wholesale America as the lender, the Financial Trust Company as the trustee, and defendant Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Wholesale America as the beneficiary.[4]

Ms. Miller alleges that at the time she executed the Note and Deed of Trust, Wholesale America did not hold a California Residential Mortgage Lender's License.[5] She also alleges that defendant Lehman Brothers Holdings Inc. ("Lehman Brothers") entered into a series of agreements, including a funding agreement, a mortgage loan purchase agreement, and a trust agreement, with defendant Greenpoint Mortgage Funding, Inc. ("Greenpoint") to purchase her loan.[6] She alleges that Wholesale America identified MERS as the beneficiary on the Deed of

---

[2] Compl. – ECF No. 1 at 5–6 (¶¶ 23–24). Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[3] *Id.*; Compl. Ex. 2 (Note) – ECF No. 1-1 at 4–10; Compl. Ex. 3 (Deed of Trust) – ECF No. 1-1 at 12–34.

[4] Compl. – ECF No. 1 at 5 (¶ 24); Compl. Ex. 3 (Deed of Trust) – ECF No. 1-1 at 12.

[5] Compl. – ECF No. 1 at 2 (¶ 3), 3–4 (¶ 11), 8 (¶ 36), 9 (¶ 42), 11 (¶ 59), 12 (¶ 70), 16 (¶ 105), 21 (¶ 143(c)). As an aside, the Note and the Deed of Trust identify Wholesale America as having had a California residential mortgage lender license number: 4150037. Compl. Ex. 2 (Note) – ECF No. 1-1 at 4; Compl. Ex. 3 (Deed of Trust) – ECF No. 1-1 at 12. This license was revoked in 2008. *See* Order Summarily Revoking Residential Mortgage Lender and/or Servicer License, *Cal. Corp. Comm'r v. Cal. Fin. Grp., Northpoint Fin. (Wholesale Am. Mortg., Inc., DBA)*, No. 4150037 (Cal. Dep't Corp. Nov. 5, 2008), http://www.dbo.ca.gov/FSD/08pdf/4150037.pdf.

[6] Compl. – ECF No. 1 at 8 (¶ 39), 20 (¶ 143(a)).

Trust to conceal from her the fact that Lehman Brothers was the true funder of her loan through its purchase agreement with Greenpoint.[7]

In February 2011, a substitution of trustee was executed in which the Financial Title Company was substituted as trustee with Cal-Western Reconveyance Corp.[8]

In March 2011, an assignment of deed of trust was executed in which MERS as nominee for Wholesale America assigned all rights and interest in the Deed of Trust to defendant Aurora Loan Services, LLC ("ALS").[9]

Later that same month, Cal-Western Reconveyance Corp. issued Ms. Miller a notice of default, stating she was behind on her payments.[10]

In July 2012, an assignment of deed of trust was executed in which ALS assigned all rights and interest in the Deed of Trust to defendant Nationstar Mortgage, LLC ("Nationstar").[11]

In February 2016, an assignment of deed of trust was executed in which Nationstar assigned all rights and interest in the Deed of Trust to defendant U.S. Bank N.A. ("U.S. Bank") as trustee for the Lehman XS Trust Mortgage Pass-Through Certificates, Series 2006-GP1.[12]

In January 2017, a company called Quality Loan Service Corp., as trustee for U.S. Bank, issued Ms. Miller a second notice of default, stating that she was behind on her payments.[13]

In May 2017, Quality Loan Service Corp. issued Ms. Miller a notice that she was in default of her Deed of Trust and that the Subject Property could be sold at a public sale.[14]

---

[7] *Id.* (¶ 41). How this worked, or how money or title was transferred between Wholesale America and MERS, on the one hand, and Lehman Brothers and Greenpoint, on the other, goes unexplained in Ms. Miller's complaint.

[8] Compl. – ECF No. 1 at 6 (¶ 25); Compl. Ex. 4 (Substitution of Trustee) – ECF No. 1-1 at 36.

[9] Compl. – ECF No. 1 at 6 (¶ 26); Compl. Ex. 5 (Corporate Assignment of Deed of Trust) – ECF No. 1-1 at 38–39.

[10] Compl. – ECF No. 1 at 6 (¶ 26); Compl. Ex. 6 (Notice of Default) – ECF No. 1-1 at 41–42.

[11] Compl. – ECF No. 1 at 7 (¶ 30); Compl. Ex. 7 (Corporate Assignment of Deed of Trust) – ECF No. 1-1 at 44–46.

[12] Compl. – ECF No. 1 at 7 (¶ 31); Compl. Ex. 8 (Assignment of Deed of Trust) – ECF No. 1-1 at 48–49.

[13] Compl. – ECF No. 1 at 7 (¶ 32); Compl. Ex. 9 (Notice of Default) – ECF No. 1-1 at 51–54.

[14] Compl. – ECF No. 1 at 7 (¶ 33); Compl. Ex. 10 (Notice of Trustee's Sale) – ECF No. 1-1 at 56–57.

## 2. The Prior Litigation

In May 2012, Ms. Miller filed a complaint in the California Superior Court in Marin County against Wholesale America, Lehman Brothers, U.S. Bank, and ALS (among other defendants), alleging violations of the Truth in Lending Act (TILA); violations of the Home Ownership and Equity Protection Act (HOEPA); fraud, deceit, and misrepresentation; breach of fiduciary duty; and quiet title, securitization, and chain of title violations.[15] Among other things, the complaint sought a court order enjoining any foreclosure of the Subject Property, cancelling the Note and Deed of Trust, and awarding Ms. Miller title to the Subject Property.[16]

ALS and U.S. Bank removed the case to the Northern District of California on the basis of federal-question jurisdiction arising from Ms. Miller's TILA and HOEPA claims.[17] Over the next year, Ms. Miller filed three successive amended complaints; the last was filed in April 2013 and named (among other defendants) Wholesale America, Lehman Brothers, U.S. Bank as Trustee for Lehman XS Trust Mortgage Pass-Through Certificates, Series 2006-GP1, ALS, and Nationstar — all defendants in this action — and asserted claims for negligence, negligent misrepresentation, violation of California Civil Code § 2923.5, securitization and chain of title violations, quiet title, and violations of California Business and Professions Code § 17200 et seq.[18]

After Ms. Miller filed her third amended complaint, which no longer alleged a federal claim, the district court remanded Ms. Miller's case back to the Marin County Superior Court.[19] Back in state court, ALS, U.S. Bank, and Nationstar filed a demurrer (the California state-court equivalent

---

[15] Compl., *Miller v. Wholesale Am. Mortg., Inc.*, No. CIV 1202426 (Cal. Super. Ct. Marin Cty. May 25, 2012) (attached as Nationstar et al.'s Mot. to Dismiss Request for Judicial Notice ("RJN") Ex. I – ECF No. 10 at 55–77). The court may take judicial notice of state court filings. *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988).

[16] *Id.* at 70–72 (¶¶ 78–88).

[17] Notice of Removal, *Miller v. Wholesale Am. Mortg., Inc.*, No. 3:12-cv-03481-JST (N.D. Cal. July 3, 2012), ECF No. 1 (attached as Nationstar et al.'s Mot. to Dismiss RJN Ex. I – ECF No. 10 at 48–50).

[18] Third Amend. Compl., *Miller v. Wholesale Am. Mortg., Inc.*, No. 3:12-cv-03481-JST (N.D. Cal. Apr. 13, 2013), ECF No. 46 (attached as Nationstar et al.'s Mot. to Dismiss RJN Ex. M – ECF No. 10 at 144–63).

[19] Order Remanding Case, *Miller v. Wholesale Am. Mortg., Inc.*, No. 3:12-cv-03481-JST (N.D. Cal. May 8, 2013), ECF No. 49 (attached as Nationstar et al.'s Mot. to Dismiss RJN Ex. O – ECF No. 10 at 167–68).

of a motion to dismiss). In September 2013, the Superior Court granted the defendants' demurrer as to all claims.[20] Ms. Miller appealed. In May 2015, the California Court of Appeal reversed solely as to Ms. Miller's claim for violation of California Civil Code § 2923.5 and affirmed the dismissal of all other claims.[21] Following another year of litigation, the Marion County Superior Court denied Ms. Miller's application to enjoin foreclosure of the Subject Property, ordered that foreclosure could proceed, and ordered Ms. Miller to show cause why her case should not be dismissed in its entirety.[22] Ms. Miller told the court that there was no reason why her case should not be deemed dismissed, and the court then dismissed her case.[23]

## STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. *See* Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a claim for relief above the speculative level . . . ." *Id.* (internal citations omitted).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, which when accepted as true, "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

---

[20] Decision on Demurrer, *Miller v. Wholesale Am. Mortg., Inc.*, No. CIV 1202426 (Cal. Super. Ct. Marin Cty. Sept. 16, 2013) (attached as Nationstar et al.'s Mot. to Dismiss RJN Ex. CC – ECF No. 10 at 233–37).

[21] *Miller v. Aurora Loan Servs., LLC*, No. A140403, 2015 WL 1003907 (Cal. Ct. App. Mar. 4, 2015).

[22] Minute Order, *Miller v. Aurora Loan Servs.*, No. CIV 1202426 (Cal. Super. Ct. Marin Cty. Sept. 16, 2016) (attached as Nationstar et al.'s Mot. to Dismiss RJN Ex. R – ECF No. 10 at 187–88).

[23] Minute Order, *Miller v. Aurora Loan Servs.*, No. CIV 1202426 (Cal. Super. Ct. Marin Cty. Oct. 19, 2016) (attached as Nationstar et al.'s Mot. to Dismiss RJN Ex. S – ECF No. 10 at 190) ("The court inquires if there is any reason this case should not be deemed dismissed. Counsel state there is no reason this case should not be deemed dismissed.") (capitalization modified).

the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

While courts will ordinarily dismiss a claim with leave to amend, "[i]t is not an abuse of discretion to deny leave to amend when any proposed amendment would be futile." *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990) (citing *Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1292–93 (9th Cir. 1983)).

# ANALYSIS

## 1. Ms. Miller's Claims Against Wholesale America Will Be Severed

The court first addresses a threshold issue. With one exception, all of the parties have consented to magistrate-judge jurisdiction.[24] One defendant, however — Wholesale America — has not been served with a summons or complaint and has not appeared in the litigation, and hence has not consented to magistrate-judge jurisdiction. It appears that Wholesale America may no longer be a going concern with the capacity to consent or to defend itself in litigation: it is a California corporation that appears to currently be suspended by the California Secretary of State,[25] and "[i]n general, a [California] corporation whose powers have been suspended or forfeited lacks the capacity to prosecute or defend an action, or appeal from an adverse judgment. Suspension or forfeiture prohibits a corporation from taking any litigation action[.]" *Ferras v. Husqvarna Constr. Prods. N. Am., Inc.*, No. C 16-01081 SBA, 2016 WL 3547926, at *3 (N.D. Cal. June 30, 2016) (citing *Bourhis v. Lord*, 56 Cal. 4th 320, 324 (2013)); *see* Fed. R. Civ. P. 17(b) (corporation's capacity to be sued is determined by law under which it is organized).

---

[24] Consents to Magistrate Judge Jurisdiction – ECF Nos. 6, 18, 19.
[25] *See* Freshman Decl. Ex. 1 – ECF No. 29 at 5.

ORDER – No. 17-cv-05495-LB                 6

1    28 U.S.C. § 636(c) allows a case to be assigned to a magistrate judge "[u]pon the consent of
2 the parties," and this has been interpreted to require the consent of all of the named parties,
3 including ones that have not been served. *See Williams v. King*, 875 F.3d 500, 503–04 (9th Cir.
4 2017). Usually, when a party does not consent to magistrate-judge jurisdiction, the court would
5 order the case to be reassigned in its entirety to a district judge. Here, however, there is a question
6 as to whether the one non-consenting party is capable of being sued, much less giving consent. All
7 of the other defendants have fully briefed motions to dismiss, and the court has taken the motions
8 under submission. Reassigning the entire case to a district judge would require duplicative work
9 by that judge, resulting in an inefficient use of judicial resources. Additionally, the other parties,
10 which all consented to magistrate-judge jurisdiction, should not have their consents frustrated just
11 because one defendant that may not be capable of being sued or giving consent happened to be
12 named as a party.

The court thus turns to Federal Rule of Civil Procedure 21, which states that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. "The court may sever the claims against a party in the interest of fairness and judicial economy and to avoid prejudice, delay or expense, and has 'broad discretion' in determining when severance is appropriate." *Ramos v. Ramos*, No. 5:14-cv-04713-PSG, 2016 WL 631993, at *2 (N.D. Cal. Feb. 17, 2016) (*Ramos I*) (quoting *TransPerfect Glob., Inc. v. MotionPoint Corp.*, No. C 10-2590 CW, 2014 WL 6068384, at *2 (N.D. Cal. Nov. 13, 2014)), *aff'd*, 691 F. App'x 487 (9th Cir. 2017) (*Ramos II*). The court finds that it is in the best interests of the parties that consented, as well as the interests of judicial economy and avoiding delay, to sever Wholesale America from this action and resolve the consenting defendants' motions. *See id.* (severing defendant that was served with complaint but had not yet consented or declined to consent to magistrate jurisdiction in order to decide motions to dismiss of other consenting defendants); *Ramos II*, 691 F. App'x at 488 (affirming severance of defendant).

**2. Ms. Miller's Remaining Claims Are Barred by Res Judicata**

"Res judicata, or claim preclusion, prohibits lawsuits on 'any claims that were raised *or could have been raised*' in a prior action." *Stewart v. U.S. Bancorp.*, 297 F.3d 953, 956 (9th Cir. 2002) (emphasis in original) (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001)). "To determine the preclusive effect of a state court judgment[,] federal courts look to state law." *Manufactured Home Cmtys. Inc. v. City of San Jose*, 420 F.3d 1022, 1031 (9th Cir. 2005) (citing *Palomar Mobilehome Park Ass'n v. City of San Marcos*, 989 F.2d 362, 364 (9th Cir. 1993)). "In California, res judicata precludes a plaintiff from litigating a claim if: [(1)] the claim relates to the same 'primary right' as a claim in a prior action, [(2)] the prior judgment was final and on the merits, and [(3)] the plaintiff was a party or in privity with a party in the prior action." *Trujillo v. County of Santa Clara*, 775 F.2d 1359, 1366 (9th Cir. 1985) (citations omitted).

**2.1  Same Primary Right**

**2.1.1  Governing Law**

"California's res judicata doctrine is based on a primary rights theory." *Manufactured Home*, 420 F.3d at 1031. The primary rights theory:

> [p]rovides that a "cause of action" is comprised of a "primary right" of the plaintiff, a corresponding "primary duty" of the defendant, and a wrongful act by the defendant constituting a breach of that duty. The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action.

*Id.* (quoting *Mycogen Corp. v. Monsanto Co.*, 28 Cal. 4th 888, 904 (2002)). "Thus, in California, 'if two actions involve the same injury to the plaintiff and the same wrong by the defendant then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery.'" *Furnace v. Giurbino*, 838 F.3d 1019, 1024 (9th Cir. 2016) (quoting *San Diego Police Officers' Ass'n v. San Diego City Emps. Ret. Sys.*, 568 F.3d 725, 734 (9th Cir. 2009)). "The critical focus of primary rights analysis is the harm suffered." *Id.* (quoting *Brodheim v. Cry*, 584 F.3d 1262, 1268 (9th Cir. 2009)).

"A party may bring only one cause of action to vindicate a primary right." *Manufactured Home*, 420 F.3d at 1031 (citing *Mycogen*, 28 Cal. 4th at 904). "Claims not raised in this single cause of action may not be raised at a later date." *Id.* (citing *Mycogen*, 28 Cal. 4th at 904).

### 2.1.2 Application

The primary right Ms. Miller asserts in this litigation is the same as the right she asserted in her prior litigation: her right to the Subject Property. The alleged wrong she claims here is the same as the one she claimed there: that the defendants seek to foreclose on the Subject Property without (so Ms. Miller claims) having a right to do so. The relief she seeks here is the same as the relief she sought there: that the defendants be barred from foreclosing on the Subject Property, that the Note and Deed of Trust be cancelled or rescinded, and that Ms. Miller be awarded full title to the Subject Property herself.

Ms. Miller asserts that "[a] single wrongful act which violates two primary rights can give rise to two causes of action."[26] Ms. Miller's litigations do not involve two primary rights, however. They involve only one: Ms. Miller's claimed right to the Subject Property, free of the Note, the Deed of Trust, and foreclosure. Regardless of how Ms. Miller might modify the factual predicate for her complaints (e.g., claiming in her prior action that the Note and Deed of Trust are unenforceable because of defects in the chain of assignment, versus claiming now that the Note and Deed of Trust are unenforceable because Wholesale America was not a licensed lender in the first place), the underlying primary right she claims is the same right in both her suits. *See Ratliff v. Mortg. Store Fin., Inc.*, No. 17-cv-02155-EMC, 2017 WL 5890090, at *7 (N.D. Cal. Nov. 29, 2017) (rejecting attempts by borrower who brought successive litigations to avoid res judicata by pleading different factual predicates for why defendants could not foreclose on deed of trust, as "the [primary right] inquiry turns on [plaintiff]'s 'right to be free from a particular injury, regardless of the legal theory on which liability is based.'") (quoting *Gilles v. JPMorgan Chase Bank, N.A.*, 7 Cal. App. 5th 907, 914 (2017)). Courts in this district and elsewhere have uniformly held that successive litigations challenging mortgages and foreclosures like the ones here involve

---

[26] Pl.'s Opp'n to Defs.' Mots. to Dismiss – ECF No. 27 at 13.

ORDER – No. 17-cv-05495-LB  9

the same primary right. *See, e.g.*, *id.*; *Solis v. Nat'l Default Servicing Corp.*, No. 17-CV-00449-LHK, 2017 WL 1709355, at *6 (N.D. Cal. May 3, 2017); *Janson v. Deutsche Bank Nat'l Trust Co.*, No. 14-cv-05639 JSC, 2015 WL 1250092, at *8 (N.D. Cal. Mar. 18, 2015); *Poulson v. Bank of Am. N.A.*, No. ED CV 14-1534 FMO (JPRx), 2015 WL 756949, at *4 (C.D. Cal. Feb. 23, 2015), *aff'd*, 675 F. App'x 650 (9th Cir. 2017).

Ms. Miller argues specifically that, in this action, she is alleging that Wholesale America was an unlicensed lender and that the defendants used MERS to conceal the funding arrangement of the true lender on her loan — allegations she did not make in her prior action — and that this takes her outside the scope of res judicata.[27] This exact argument, however, has been squarely rejected in *Saterbak v. National Default Servicing Corp.*, No. 15cv956-WHQ-BGS, 2016 WL 4430922 (S.D. Cal. Aug. 22, 2016). The plaintiff there, like Ms. Miller here, initially brought a state-court action to stop foreclosure on her property, primarily on the theory that her note and deed of trust had not been properly assigned to the party that was trying to foreclose on the property. *See id.* at *5 (quoting *Saterback v. JPMorgan Chase Bank, N.A.*, 245 Cal. App. 4th 808, 811 (2016)). The plaintiff there, like Ms. Miller here, then brought a second federal-court action to stop foreclosure on her property, under a new theory that the defendants used "a nonexistent entity. . . . to conceal the real creditor funding the loan" and that "said concealment resulted in what HUD classifies as a table funded loan." *See id.* at *1. The plaintiff there, like Ms. Miller here, argued that res judicata did not apply to her second federal-court action, because her allegations in the federal-court action that "the deed of trust is unenforceable due to Defendant's tortious conduct" in concealing the true lender and in "table funding" the loan were different than her allegations in the state-court action that the defendants could not claim ownership over her debt because of defects in the chain of assignment. *See id.* at *5. But the court there rejected that argument, holding that "[w]hile Plaintiff asserts additional claims and legal theories in the current action, the underlying remedy Plaintiff seeks is the same — a court order protecting Plaintiff's home from foreclosure by invalidating the instruments through which Plaintiff's mortgage loan originated and was transferred" and res

---

[27] *See* Pl.'s Opp'n to Defs.' Mots. to Dismiss – ECF No. 27 at 11.

judicata therefore applied. *Id.* at *6. The *Saterbak* case is instructive, and Ms. Miller cites no on-point authority to the contrary.[28] The same conclusion is compelled here — Ms. Miller's earlier litigation and her current one here involve the same primary right.

Ms. Miller also argues that, in addition to challenging the original loan transaction, she is also "challenging . . . instruments that were recorded anywhere from four to six years after [her first litigation]," which brings her claims outside the scope of res judicata.[29] But Ms. Miller's claims regarding these later-created documents, such as later-created assignments of the Deed of Trust, are derivative of and depend on her allegation that the original loan transaction in 2006 was unlawful and that the original Note and Deed of Trust are void.[30] As courts have held in similar circumstances, simply alleging the existence of later-created mortgage documents is insufficient to take a case out of the scope of res judicata where the same "primary right" is at issue in both actions. *See, e.g.*, *Grieves v. MTC Fin., Inc.*, No. 17-CV-01981-LHK, 2017 WL 3142179, at *11

---

[28] The cases Ms. Miller cites involve significantly different facts and claims and do not bear on the question of whether a borrower's claimed right to a property free of any mortgages or foreclosures involves one "primary right" or several. The case she most heavily relies on, *Sawyer v. First City Financial Corp., Ltd.*, 124 Cal. App. 3d 390 (1981), involved successive cases brought by a lender (not a borrower) to enforce a promissory note, where the court held that the "primary right" of the lender to enforce his note by its terms was separate from the "primary right" of the lender not to have his note "stolen" through a sham foreclosure sale. *Id.* at 402. It does not stand for the proposition that successive lawsuits by a borrower to claim title to a property free of any mortgages or foreclosures involves multiple, different "primary rights." *Cf. Saterbak*, 2016 WL 4430922, at *6 (citing *Sawyer*, 124 Cal. App. 3d at 399–400, and nonetheless concluding that res judicata applied to successive borrower actions). Ms. Miller's other cases are even further afield. *Agarwal v. Johnson*, 25 Cal. 3d 932 (1979), was an employment case in which the California Supreme Court held that a judgment on a claim under Title VII of the Civil Rights Act, which limits monetary damages to back pay, did not operate as a res judicata bar on other claims where the plaintiff could recover damages other than back pay. *Id.* at 955. And *Branson v. Sun-Diamond Growers of California*, 24 Cal. App. 4th 327 (1994), was an employee-indemnification case involving a question of whether indemnification under the California Corporations Code and contractual indemnification were the same "primary right." *Id.* at 343–44. None of these cases are on point here.

[29] Pl.'s Opp'n to Defs.' Mots. to Dismiss – ECF No. 27 at 15.

[30] *See, e.g.*, Compl. – ECF No. 1 at 10–11 (¶¶ 56–66) (claiming that original loan transaction in 2006 was unlawful because Wholesale America and MERS concealed Lehman Brothers's involvement), 12–15 (¶¶ 68–96) (same, and alleging that MERS's assignment of the Deed of Trust to ALS in 2011 was improper because it never had authority to transfer Ms. Miller's debt), 16–17 (¶¶ 104–14) (claiming that the original Deed of Trust in 2006 fraudulently identified MERS as beneficiary and that subsequent assignments of deed of trust are fraudulent because they "repeat[] the false narrative" in the original 2006 Deed of Trust), 20–21 (¶ 143–44) (alleging RICO and civil conspiracy based on events that took place in 2006), 23 (¶ 162) (alleging Fair Debt Collection Practices Act violation based on illegality of original 2006 transaction and void status of original 2006 Note and Deed of Trust).

(N.D. Cal. July 25, 2017) ("[plaintiff] cannot avoid res judicata 'by tacking on new allegations regarding' foreclosure documents recorded after the . . . prior action") (internal brackets omitted) (quoting *Fields v. Bank of N.Y. Mellon*, No. 17-cv-00272-JST, 2017 WL 1549464, at *2 (N.D. Cal. May 1, 2017)).[31]

The first res-judicata element is therefore satisfied here.

### 2.2 Prior Judgment on the Merits

A dismissal with prejudice constitutes a final judgment on the merits, triggering res judicata and barring subsequent lawsuits on the same issues. *See, e.g.*, *Torrey Pines Bank v. Super. Ct.*, 216 Cal. App. 3d 813, 820 (1989) (citations omitted). The state trial court originally dismissed Ms. Miller's prior litigation with prejudice on all claims. The appeals court affirmed the dismissal, except as to Ms. Miller's claim for violation of California Civil Code § 2923.5 and affirmed as to all other claims. Following another year of litigation, the state trial court then ordered Ms. Miller to show cause why the remainder of her case should not be dismissed, and when Ms. Miller offered no cause, dismissed the rest of Ms. Miller's case. Ms. Miller does not dispute that these judgments are final and were on the merits. The second res-judicata element is therefore satisfied here.

### 2.3 Same Parties or Parties in Privity

Four of the six defendants here — Lehman Brothers, U.S. Bank as Trustee for Lehman XS Trust Mortgage Pass-Through Certificates, Series 2006-GP1, ALS, and Nationstar — were also defendants in Ms. Miller's first action. The two remaining defendants — MERS and Greenpoint — are in privity with the earlier defendants. MERS was named as the original beneficiary on the Deed of Trust and assigned its interest to ALS, a party to Ms. Miller's earlier action, and therefore

---

[31] The one potential claim Ms. Miller asserts that is not derivative of her allegation that the original loan transaction in 2006 is unlawful is her claim that the January 2017 notice of default did not contain a declaration signed under penalty of perjury. Compl. – ECF No. 1 at 18 (¶ 120) (claiming this supposedly violates "Civil Code 2015.5"). But this does not state an actual claim, as there is no actual requirement that declarations accompanying a notice of default be signed under penalty of perjury. *Mabry v. Super. Ct.*, 185 Cal. App. 4th 208, 213–14 (2010) (holding that California Civil Code 2923.5 declarations do not need to be signed under penalty of perjury and rejecting arguments based on California Civil Procedure Code § 2015.5 to the contrary).

is in privity for res-judicata purposes. *See, e.g.*, *Apostol v. CitiMortgage, Inc.*, No. 13-cv-01983-WHO, 2013 WL 6328256, at *5 (N.D. Cal. Nov. 21, 2013) (finding MERS in privity for res-judicata purposes with defendant named in prior lawsuit where MERS had assigned the deed of trust to that defendant). And Greenpoint allegedly entered into a funding agreement, a mortgage loan purchase agreement, and a trust agreement with Lehman Brothers, a party to Ms. Miller's earlier action, and therefore is in privity for res-judicata purposes as well. *See id.*; *accord, e.g.*, *Lee v. Thornburg Mortg. Home Loans Inc.*, No. 14-cv-00602 NC, 2014 WL 4953966, at *6 (N.D. Cal. Sept. 29, 2014) (plaintiff's allegations that defendants did not properly assign interest in mortgage amongst each other "demonstrat[es] a commonality of interest between the defendants for purposes of res judicata"). Ms. Miller does not dispute that the defendants are in privity. The third res-judicata element is therefore satisfied here.

## CONCLUSION

All three requirements of res judicata being met, the Court accordingly grants the defendants' motion to dismiss Ms. Miller's complaint as barred by res judicata. Because res judicata would continue to apply to any amendment of these claims and hence amendment would be futile, the dismissal is with prejudice. *Cf., e.g.*, *Ratliff*, 2017 WL 5890090, at *11 (dismissing complaint that was barred by res judicata with prejudice because amendment would be futile); *Solis*, 2017 WL 1709355, at *7 (same).

**IT IS SO ORDERED.**

Dated: January 5, 2018

_____
LAUREL BEELER
United States Magistrate Judge